UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JERRY GROVES,<br><br>                Plaintiff,<br><br>    v.<br><br>CITY OF RENO,<br>SCOTT JOHNSON,<br><br>                Defendants. | Case No. 3:13-cv-00537-MMD-WGC<br><br>ORDER<br><br>(Def's Motion for Summary Judgment –<br>dkt. no. 28) |

**I.   SUMMARY**

Before the Court is Defendant Scott Johnson's ("Johnson" or "Defendant") Motion for Summary Judgment ("Motion"). (Dkt. no. 28.) The Court has also reviewed Plaintiff Jerry Groves' ("Groves" or "Plaintiff") response (dkt. no. 31) and Defendant's reply. (Dkt. no. 32.) For the reasons set out below, Defendant's Motion is denied.

**II.   BACKGROUND**

This case arises from a shooting that occurred when Reno police officers responded to a call about a fight involving a baseball bat. (Dkt. no. 26.) The parties do not dispute that Groves does not remember any details of the shooting. Defendant relies on his own statements and testimony, a Washoe County Sheriff's Report ("Sheriff's Report"), as well as the testimony of another officer, Wesley Leedy, who was present when the shooting occurred. (Dkt. nos. 28-1, 28-2, 28-3.) Plaintiff similarly relies on some of their testimonies, as well as the testimony of another officer, Joshua Sanford. (Dkt. no. 31-2.) The following facts are taken from these deposition testimonies and the Sheriff's Report.

1           On July 21, 2012, at about 3:30 p.m., Johnson responded to a call indicating that a fight had broken out at an apartment building known as the Lake Mill Lodge. The call indicated that the fight involved a baseball bat. (Johnson Dep., dkt. no. 28-2 at 8.) When Johnson arrived, he saw other police officers attending to a bleeding man. Those officers and other bystanders directed him to room 422. (*Id.*) Johnson, accompanied by another officer, made his way to room 422. (*Id.*) When he arrived he found the front door closed and a front window broken. (*Id.* at 10.) Johnson could see into the room through the broken window and was able to see Groves lying on one of two beds inside the room. Groves appeared to be injured on his face. (*Id.*) Johnson could also see a German Shepard in the room. (*Id.* at 11.) Johnson initially believed Groves was the victim of the attack. (Sheriff's Report, dkt. no. 28-1 at 13.)

           Standing outside the room, Johnson attempted to identify himself as a police officer. (Dkt. no. 28-2 at 11.) Groves responded but Johnson could not understand him. (*Id.*) Johnson then asked if anyone else was in the room and whether anybody else was injured. Once again, Johnson could not make out a clear response from Groves. (*Id.* at 12). Based on Groves' responses and demeanor, Johnson believed that he may have been intoxicated or suffering from a mental health issue or head injury. (*Id.* at 11).

           After Johnson and other officers continued to ask Groves to let them in, Groves got up, stumbled over the bed, and fell hard onto the floor. (*Id.* at 12-13.) He then struggled to get back up and began to lead the German Shepard toward the broken window. (*Id.* at 13-14.) Johnson told Groves not to bring the dog near the window, because the officers did not know whether the dog was friendly. (*Id.* at 15.) After several seconds Groves let the dog go. (*Id.*)

           Groves then sat down on the second bed, which was about four feet from the window. Two chairs occupied the space between the bed and the window. (Dkt. no 28-1 at 14.) Groves "in the strangest way, dove underneath the closest chair" to Johnson. (Dkt. no. 28-2 at 15.) He reached underneath one of the chairs while keeping his eyes on Johnson. Johnson could no longer see Groves' hands and feared he might be

2

1 | reaching for a weapon. (*Id.* at 17-21.) Johnson drew his firearm and yelled to Groves, "show me your hands, show me your hands, don't reach under the chair, don't reach under the chair!" (Dkt. no. 28-1 at 14.) Other officers also yelled similar commands and attempted to kick down the door. (*Id.*)

Groves "jerked" his right arm up from under the chair. (Dkt. no. 28-2 at 24.) Johnson shot Groves in his right forearm. Johnson intentionally fired his gun and was aiming for Groves' center of mass. (*Id.* at 22.) He believes that he fired his weapon while Groves' hand was still out of sight. (*Id.* at 25.) After being shot, Groves raised his arms in the air and sat back down on the bed. (*Id.* at 25-27.) Some officers entered the room, and Groves moved back toward the chairs. (*Id.* at 27-28.) One officer, who was still outside of the room, looking in through the broken window, deployed a Taser. (*Id.* at 28-29.) The Taster hit Groves and incapacitated him. The officers then restrained and handcuffed Groves. (*Id.* at 29.)

Subsequent investigation revealed that Groves had a blood alcohol level of 0.3, there were no firearms in the room, and there was a box cutter inside of a zippered bag near one of the chairs. (Dkt. 28-1 at 17-18.)

The Complaint alleges a claim under 42 U.S.C. § 1983 for violation of Groves' Fourth Amendment rights and a claim of battery under Nevada law. (Dkt. no. 26 at 2-3.)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.  EVIDENTIARY ISSUES**

Johnson offered as an exhibit to his Motion a Washoe County Sheriff's Report ("Sheriff's Report") (dkt. no. 28-1). That report included interviews with a number of officers who were at the scene of the shooting, as well as factual findings about the scene itself and legal conclusions about Johnson and Groves' conduct. Groves objects to Johnson's use of the Sheriff's Report. Specifically, Groves alleges that any statements in the report, other than those made by Johnson, are inadmissible hearsay.

///

4

In ruling on a motion for summary judgment, the Court may only consider evidence that is admissible. *See Orr v. Bank of Am.,* 285 F.3d at 773 (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988). Rule 56(c) of the Federal Rules of Civil Procedure allows parties to make evidentiary objections to evidence cited to support or dispute a fact.

Fed. R. Evid. 803(8)(a)(iii) carves out an exception to the hearsay rule for factual findings from a legally authorized investigation of a public office. This exception, however, does not extend to third-party testimony included in a report of those findings. *See United States v. Morales*, 720 F.3d 1194, 1202 (9th Cir. 2013); *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) ("Placing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible.") (quotation omitted). Nor does it extend to any legal conclusions in the Sheriff's Report. *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010).

The factual findings and Johnson's statements contained in the Sheriff's Report fall within Rule 803(8)(a)(iii)'s hearsay exception and are admissible. The Court will consider these items of evidence.

**V.    DISCUSSION**

    **A.    Section 1983 Claim**

Groves claims that Johnson used excessive force when he shot him in the arm in violation of the Fourth Amendment. Johnson argues that he did not violate Groves' constitutional rights because his use of deadly force was reasonable, and even if it was not, he is entitled to qualified immunity.

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor,* 490 U.S. 386, 393-94 (1989). To prevail on a claim under § 1983, a plaintiff must prove that (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). Here, it is undisputed that

1 Johnson was acting under color of state law. Plaintiff relies on substantive rights conferred by the Fourth Amendment. Plaintiff thus states a claim under § 1983.

Where a plaintiff has stated a valid cause of action under § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity, which Johnson has invoked here. *See Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005). To determine whether an individual officer is entitled to qualified immunity, a court must make a two-step inquiry: (1) whether the facts shown make out a violation of a constitutional right; and (2) if so, whether the constitutional right was clearly established as of the date of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted); *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013 (9th Cir. 2002). The Supreme Court has instructed that district judges may use their discretion in deciding which qualified immunity prong to address first based on the circumstances of the case at issue. *See Pearson v. Callahan,* 555 U.S. 223 at 232, 236 (2009). The Court will address both prongs of this test.

### 1. Was Johnson's Use of Deadly Force Objectively Unreasonable and in Violation of Groves' Fourth Amendment Rights?

Johnson argues that his use of force was objectively reasonable, citing as support the fact that Groves was involved in a fight wherein one of the parties had a baseball bat, he ignored commands to show his hands, he led his dog towards the police officers, he had a "deviant" look in his eyes, and he rapidly brought his hand out from under the chair. Johnson also argues that he "had no reason to **not** to suspect that GROVES could have a gun." (Dkt. no. 32 at 3.)

Groves responds that Johnson's account contains contradictions and, even if assumed to be accurate, does not describe a situation in which Johnson's use of deadly force would be reasonable. Groves points out that Johnson recognized that he was incoherent, and that should have explained his failure to respond to directions. Groves contends that a reasonable juror could conclude that he had raised his hand in response

6

to the officers' commands for him to show them his hands. He also notes that the officers never saw a weapon inside his room and had no reason to believe he possessed a firearm.

To determine whether the use of force by a law enforcement officer was excessive under the Fourth Amendment, a court must assess whether it was objectively reasonable "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." *Graham v. Conner*, 490 U.S. at 397. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted). In this analysis, the Court must consider the following factors: (1) the severity of the crime at issue; (2) whether Groves posed an immediate threat to the safety of the officers or others; and (3) whether Groves actively resisted arrest. *Id.*; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001). While these factors act as guidelines, "there are no per se rules in the Fourth Amendment excessive force context." *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir.2011) (en banc).

The Court must account for the reality that police officers make quick decisions in high-stress situations. *Graham* 490 U.S. at 396*.* Hence, even a mistaken belief that a suspect is armed may be reasonable in some circumstances. *See Lamont v. New Jersey,* 637 F.3d 177, 183 (3d Cir. 2011) ("[A]n officer who uses deadly force in the mistaken belief that a suspect is armed will be forgiven so long as the mistake is reasonable."). "Not all errors in perception or judgment, however, are reasonable . . . nor does the Constitution forgive an officer's every mistake." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). A simple statement by an officer that he fears for his safety is not enough to justify the use of force. There must be objective factors justifying such a concern. *Deorle v. Rutherford*, 272 F. 3d 1272, 1281 (9th Cir. 2001).

///

The Ninth Circuit has repeatedly recognized that excessive force cases are rarely suited for summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside,* 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). Moreover, the Court must ensure that Johnson is not taking advantage of the fact that as the person most likely to offer disputed testimony, Groves is essentially unable to testify because Groves has no recollection of the event. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014) (cautioning that in deadly force cases where the victim is dead and is unable to contradict the officer and no other witnesses saw the incident, the court "must ensure that the officer is not taking advantage of the fact that the only witness most likely to contradict his story — the person shot dead — is unable to testify.")

The first *Graham* factor is the nature of the crime at issue. Johnson maintains the underlying crime at issue is assault with a deadly weapon. Groves counters that Johnson did not know whether he was the assailant, the victim, or indeed whether he was involved in the fight at all. Since the second *Graham* factor is dispositive in this case, the Court need not resolve this disagreement.

The second *Graham* factor requires this Court to consider whether Groves posed an immediate threat to the safety of the officers. "The immediacy of the threat posed is the most important factor." *Gonzalez v. City of Anaheim,* 747 at 794 (citing *Mattos v. Agarano,* 661 F.3d at 441; *see Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994) (The second is the "most important single element of the three specified factors."). If, after reviewing the record, the Court finds that there is a factual question as to whether it was reasonable for Johnson to believe Groves posed an immediate threat, then summary judgment must be denied. *Chew,* 27 F.3d at 1441,

There is no question that if Groves were actually pointing a firearm at the officers, the use of deadly force would have been reasonable. *See George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) ("When an individual points his gun 'in the officers' direction,' the Constitution undoubtedly entitles the officer to respond with deadly force.") (citations omitted). That was not the case here. Johnson never saw a firearm. None of Johnson's fellow officers told Johnson that they saw a weapon or that Groves possessed a gun. (Dkt. no. 28-1 26 – 27.)

Johnson argues, however, that he thought Groves posed a safety threat because he had no reason to believe that Groves *did not* have a gun. But if this logic were accepted, the targets of force would be required to affirmatively prove that they were unarmed. This flips the applicable law on its head. Once a plaintiff alleges that an officer used excessive force, the officer must point to objective reasons justifying that use of force. For example, in *Robinson*, 278 F.3d at 104, the Ninth Circuit, en banc, rejected the argument that the police were justified in drawing their weapons on a suspect who approached them from a distance based solely on their knowledge that he had been carrying a shotgun earlier that day. In that case, the police had at least some indication that the suspect owned a firearm, yet the court found that such an indication, alone, was "insufficient to justify the intrusion on [the suspect's] personal security." *Id.*

Johnson points to an objective factor to support his perception that Grove posed an immediate threat. In his brief, Johnson states that Groves "brought his arm up in a threatening manner with his hand pointed like a gun." (Dkt. no. 28 at 5.) As support, Johnson cites to the Sheriff's Report. (Dkt. no. 28-1 at 14.) However, this statement reflects the interviewer's description of Johnson during his interview, not what Groves did: "While Johnson was telling me what he saw … [h]e held his index finger and thumb up in a shape that replicated what I believed to be a gun." (*Id.*) Johnson's own deposition testimony makes clear that he did not see Groves' hand until after he shot Groves:

Q: And you asked him to put his hands up while he was reaching?

///

| | | |
|---|---|---|
| 1 | A: | Yes, sir. Put your hands up, quit reaching, show us your hands, just |
| 2 | | show us your hands. |
| 3 | Q: | Okay. Did he have anything in his hands? |
| 4 | A: | When I shot him he did not have anything in his hand. |
| 5 | […] | |
| 6 | Q: | Okay. How far up did the hand go, would you say, from, you know, |
| 7 | | from when you could see it corning out from under the chair, how far |
| 8 | | up did it come before you shot? |
| 9 | A: | I don't remember seeing his full hand. When I fired, I believe his |
| 10 | | hand was still out of sight … but I could not see his hand even after I |
| 11 | | fired, only after he was hit did he actually bring his hands up and say |
| 12 | | "okay, okay". It was only at that time after he'd been shot that I |
| 13 | | could actually see his hands and he brought them up, just like this |
| 14 | | (indicating) and put his hands up, obeying commands from that |
| 15 | | point. |

(Dkt. no. 28-2 at 24-25.)

This discrepancy, among others, creates triable issues of fact.[1] Viewing the evidence in the light most favorable to the non-moving party, the evidence does not show indisputably that Groves posed an immediate threat to the officers. A reasonable jury could find that Groves did not pose as an immediate danger to anyone. Groves was in a room alone except for his dog and where Johnson and the other officers could observe him fully through the broken window until the moment when Johnson fired his shot. Groves was not going to be able to flee since the only exit (the door and broken windows) were guarded by Johnson and his fellow officers. Since Johnson initially thought Groves was the victim, Johnson presumably sought Groves' cooperation to

---

[1]Groves also points out that Johnson testified that Joshua Sanford drew his gun around the same time. However, Sanford testified that he never drew his gun. (Dkt. no. 31 at 6.)

10

render aid but no one, including Groves, was in any immediate danger or faced any threat of injury. Although it took him a few seconds, Groves was compliant when Johnson asked him to not bring his dog near the window. Groves did not verbally or physically threaten the officers. In fact, Johnson thought Groves was incoherent and may have mental health issues or be under the influence. Moreover, Johnson could not reasonably assume that Groves was reaching for a firearm just because, as he argues, he had no reason to suspect otherwise. (Dkt. no. 32 at 3.) As the Ninth Circuit has observed in evaluating qualified immunity in the context of the use of a weapon in conducting an investigatory stop, "not knowing whether a suspect is armed is not the same as having reason to believe the suspect is actually armed." *Johnson v. Bay Area Rapid Transit,* 724 F.3d 1159, 1177 (9th Cir. 2013). Johnson has failed to show an absence of triable issues of fact with regards to the reasonableness of his perception that Groves posed an immediate threat. Therefore the second, and most important, factor weighs against a finding that Johnson's use of force was objectively reasonable.

The last *Graham* factor is whether Groves was resisting arrest. Groves was not under arrest until after he was shot. Johnson originally thought Groves was the victim of an assault, and that he needed immediate medical attention. (Dkt. no. 28-1 at 13.) Johnson recognized that something was wrong with Groves, and thought he might be under the influence of drugs or alcohol, or have some kind of head injury. (*Id.*) Groves' behavior during the encounter, as described by Johnson, was unpredictable and uncooperative, but he was not resisting arrest because he was not under arrest. The last factor weighs against a finding that Johnson's conduct was objectively reasonable.

At least two *Graham* factors, including the most important factor, weigh against a finding that Johnson's use of force was objectively reasonable. A reasonable jury could find that Johnson's use of force was unreasonable, considering the totality of the circumstances.

///

///

**2.   Was the Fourth Amendment Violation Clearly Established?**

The second prong of a qualified immunity analysis requires the Court to determine whether the law, as it existed at the time of the incident, was clearly established. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011) (quotation marks and citation omitted). The Supreme Court has cautioned courts "not [to] define clearly established law at a high level of generality." *Id.* at 2084; *see also City & Cnty. of San Francisco v. Sheehan,* ––U.S. ––, ––, 135 S.Ct. 1765 (2015). Yet, it is "clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 1997) ("Otherwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.").

In evaluating the second prong, the Court must ask whether a reasonable police officer would have understood that he may use deadly force based on the premise that he had no reason *not* to believe that a suspect was armed, rather than because positive factors indicated that the suspect had a hidden firearm.[2] The law is clearly established that deadly force may not be used under the circumstances presented here.

In *Tennessee v. Garner,* 471 U.S. 1 (1985), the Supreme Court held that a police officer may not use deadly force "unless it is necessary to prevent escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Id.* at 3. Officers are generally justified in

///

---

[2] Neither party offers any meaningful articulation of the clearly established law in their briefs to satisfy this second prong. The Court's articulation is generous to Johnson in its characterization of Groves as a "suspect" because Johnson initially thought Groves was the victim of the attack. (Dkt. no. 28-1 at 13.)

1  their use of deadly force when suspects are armed and officer believes his or her safety
2  is endangered. *See Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005) (collecting
3  cases holding deadly force was reasonable). However, the belief that one's safety is in
4  danger must be reasonable. *See, e.g., Mattos v. Agarano*, 661 F.3d 433, 444 (9th Cir.
5  2011) (officer's use of Taser on a woman who did not verbally threaten them, gave no
6  indication of being armed, and was not a physical threat constituted excessive force).

Two Ninth Circuit cases are especially instructive on the contours of the law governing the use of deadly force. In *Deorle*, 272 F.3d at 1275, an officer responded to a call about Deorle, who was drunk and behaving erratically. At different points, Deorle had brandished a hatchet at a police officer, shouted "kill me," threatened to "kick [the officer's] ass," and walked around with an unloaded cross-bow. *Id.* at 1276-77. The officer observed Deorle for five to ten minutes, before Deorle began walking towards the officer with a bottle of lighter fluid. The officer then fired a "less-lethal … beanbag round" which struck Deorle in the face. *Id.* at 1277-78. The round permanently blinded Deorle and fractured his skull in several places. *Id.*

Like the case at hand, officers in *Deorle* were initially investigating peculiar behavior, rather than attempting to arrest the suspect. The officers recognized that something was wrong with Deorle, and also recognized that he was not trying to leave his own property or harm anyone on it. In denying the officer's qualified immunity defense, the court wrote:

> Every police officer should know that it is objectively unreasonable to shoot . . . an unarmed man who: has committed no serious offense, is mentally or emotionally disturbed, has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals.

*Id.* at 1285.

Likewise in *Robinson*, 278 F.3d 1007, police officers arrived at Robinson's home to address a dispute about his neighbor's dogs attacking his cattle. The officers had received a report that Robinson had used a shotgun to kill and maim his neighbor's dogs earlier in the day. When Robinson calmly walked out of his home and towards the

officers, the officers pointed their guns at his head at a distance of about five feet. *Id*. at 1010. Robinson argued that the officers' use of their weapons was unreasonable and a violation of the Fourth Amendment, and the Ninth Circuit agreed. *Id*. at 1014. *Robinson*, like *Deorle*, shows that in order to be objectively reasonable, an officer's use of force must be based on more than conjecture or evidence that a suspect may have had a weapon at some point. It must be based on factors that would lead a reasonable person to believe the suspect was armed and posed a threat at the time the officer used force.

A reasonable officer, after having reviewed *Robinson* and *Deorle*, would not believe it was reasonable to use deadly force against Groves when he had no positive indication that Groves had a hidden firearm to present a threat of physical injury to the officers. Johnson's use of force under these circumstances violated Groves' clearly established Fourth Amendment rights.

For the reasons discussed above, Defendants' Motion for Summary Judgment on Plaintiff's §1983 claim is denied.

### B. Battery Claim

Police officers are allowed to use an amount of force that reasonably appears necessary, and are liable for battery only to the extent that they use more force than is reasonably necessary. *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (discussing Nevada law). The analysis of a battery claim largely overlaps the analysis of whether the amount of force Johnson used was reasonable under the Fourth Amendment. *See, e.g.*, *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1014 (D. Nev. 2014) ("[T]he standard for battery by a police officer under Nevada law is the same as under a 42 U.S.C. § 1983 claim.").

Whether an amount of force was reasonably necessarily depends on whether an officer reasonably perceived a threat to his safety or the safety of others. The same factual dispute underlies this analysis. If Johnson's belief that Groves was retrieving a gun was objectively reasonable, then his response may have also been reasonable. For the same reasons that Defendant has failed to show that no genuine issues of material

fact exist in relation to the excessive force claim, he has similarly failed on the state law battery claim. Summary judgment on the battery claim is denied.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Defendant's Motion.

Defendant's Motion for Summary Judgment (dkt. no. 28) is denied.

DATED THIS 14th day of September 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE